IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : CRIMINAL CASE NO. |
|  | : 1:09-CR-446-TWT-LTW |
| LUIS MANUEL HACES-DELGADO, | : |
| Defendant. | : |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS DEFENDANT READY FOR TRIAL[1]**

Pending before this Court is Defendant's Motion to Suppress Intercepted Communications. Docket Entry [75]. The Government has filed a response in opposition to Defendant's motion. Docket Entry [109]. Defendant submitted a reply to the Government's response. Docket Entry [114]. Having considered the aforementioned motions and all supporting documents submitted, and for the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motion to Suppress Intercepted

---

[1] This Court observes that the Defendant has been indicted with additional Defendants and that matters pertaining to the Co-Defendants are still pending. Pursuant to 18 U.S.C.§ 3161(h)(7) (the Speedy Trial Act) the time for commencing this Defendant's trial may be stayed until such time as the other Defendants have been certified ready for trial. Hence, it is not necessary to place the above-named Defendant's case on the calendar for trial at this time.

Communications be **DENIED**.  Docket Entry [75].

## **BACKGROUND**

On April 9, 2009, Scott Nesbit, a Special Agent with the Drug Enforcement Administration, applied for and obtained a search warrant from a magistrate judge of this Court allowing him to place an electronic tracking device on a 2000 blue Chevrolet Malibu bearing license plate AWA8388, registered to Daniel Morales.  (Gov't Ex. A, p. 3).  Special Agent Nesbit, who has received training in drug trafficking investigations and conducted investigations which resulted in arrests of individuals who received and distributed drugs, states that he is familiar with the manner in which narcotics traffickers conduct their business, including the manner in which they report and distribute controlled substances.  (Gov't Ex. A, p. 3, 5-6).  In support of his application for the warrant, Special Agent Nesbit submitted an affidavit where he swore that he believed that the blue Chevrolet was used by a suspected supplier of a known drug trafficker, Angel Ruben Resendiz ("Resendiz"), to distribute narcotics.  (Gov't Ex. A, p. 3, 5).  According to Special Agent Nesbit, his training and experience has taught him that drug traffickers attempt to remain mobile to avoid detection, arrange meetings at different locations to avoid any established pattern of conduct, and use their vehicles to transport drugs and to meet and plan with other co-conspirators.  (Gov't Ex. A, p. 7).

2

Special Agent Nesbit states that on or around February 19, 2009, during the course of the DEA's investigation of drug trafficking organizations distributing cocaine imported from Mexico into the southeastern United States, a reliable confidential informant phoned Resendiz, who was known by the confidential informant to be an Atlanta-based broker of multi-kilogram loads of cocaine, to discuss future multi-kilogram cocaine deals.  (Gov't Ex. A, p. 8).  According to Special Agent Nesbit's affidavit, on February 20, 2009, the confidential informant met with Resendiz in person and posed as a cocaine buyer while DEA agents surveilled the meeting.  (Gov't Ex. A, p. 9). During the meeting, the confidential informant discussed potential multi-kilogram cocaine deals.  (Gov't Ex. A, p. 9).  In a telephone conversation later that day, Resendiz told the confidential informant that he could immediately access 200 kilograms of cocaine to sell. (Gov't Ex. A., p. 9).  The same day, Resendiz was observed traveling to an apartment complex located in Norcross, Georgia where he met with, among others, two Hispanic males who drive the subject blue Chevrolet.  (Gov't Ex. A, p. 9).  After Resendiz left the meeting at the complex, he told the confidential informant on the phone that he had just brokered a one-kilogram cocaine deal using a supplier that he planned to use for future transactions.  (Gov't Ex. A, p. 10).

3

Special Agent Nesbit further stated that on April 2, 2009, the confidential informant and Resendiz spoke on the telephone and planned a two kilogram cocaine deal to occur at an apartment complex in Norcross. (Gov't Ex. A, p. 10). According to Special Agent Nesbit's affidavit, the confidential informant, while at the apartment complex, introduced an undercover agent, who was posing as a buyer, to Resendiz. (Gov't Ex. A, p. 10). After the undercover agent went into an apartment, Resendiz placed and received several telephone calls and gave directions to the callers as to where he and the confidential informant were located. (Gov't Ex. A, p. 10).

Subsequently, two Hispanic males arrived at the complex in the subject blue Chevrolet. (Gov't Ex. A, p. 10). Resendiz, one of the Hispanic males, and the confidential informant entered the apartment where the undercover agent was waiting. (Gov't Ex. A, p. 10). Inside the apartment, the Hispanic male appeared to remove one kilogram of cocaine from either his jacket or pants and gave it to the confidential informant. (Gov't Ex. A, p. 10). After the confidential informant placed $28,500 on the floor and Resendiz counted the money, Resendiz and the Hispanic male left the apartment and entered the blue Chevrolet. (Gov't Ex. A, p. 10). Resendiz then exited the blue Chevrolet, and drove away in his own car. (Gov't Ex. A, p. 11).

As a result, Special Agent Nesbit stated in his affidavit that he believed there was probable cause to conclude that the subject vehicle will be used in the transportation of cocaine and currency in connection with illegal activities. (Gov't Ex. A, p. 11). Special Agent Nesbit stated that he believed installation of an electronic tracking device would assist in locating properties used in connection with drug activities and would help with physical surveillance of the vehicles and its drivers.

## **DEFENDANT'S MOTION TO SUPPRESS[2]**

Defendant contends that information agents collected from the electronic tracking device placed on the blue Chevrolet should be suppressed because no probable cause exists on the face of Special Agent Nesbit's affidavit. In support, Defendant argues that probable cause was not established to show a connection between Defendant and the blue Chevrolet or that normal surveillance methods were attempted first, but failed to produce results.

Special Agent Nesbit's affidavit supplied probable cause for the search warrant. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizure." U.S. v. Martin,

---

[2]The Government initially argued Defendant failed to establish standing to challenge the search. Because this Court finds that there was probable cause to issue the search warrant, Defendant's standing to contest the search is **DEEMED MOOT**.

5

297 F.3d 1308, 1312 (11th Cir. 2002). A warrant may not issue except upon a showing of probable cause. U.S. Const. amend. IV. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Martinelli, 454 F.3d 1300, 1307 (11th Cir. 2006). In this case, the magistrate judge had more than ample information to conclude that the blue Chevrolet was being used to transport illegal drugs and money connected to illegal activities. Special Agent Nesbit stated in his affidavit that after Resendiz left a meeting with the two males driving the blue Chevrolet at an apartment complex, he told the confidential informant on the phone that he had just brokered a one-kilogram cocaine deal using a supplier that he planned to use for future transactions. Thus, it would have been reasonable for the magistrate judge to conclude that the deal was brokered with the two men inside the blue Chevrolet. Additionally, on the day of the cocaine deal, Resendiz placed and received several telephone calls and gave directions to the callers as to where he and the confidential informant were located. Subsequently, the two unidentified males arrived at the complex in the blue Chevrolet, and one, who was carrying the cocaine in either his jacket or his pants, gave the cocaine to the confidential informant in exchange for the cash, in the presence of the undercover agent. After the exchange concluded, both Resendiz and the

male who had given the cocaine to the confidential informant, entered the blue Chevrolet. As a result, it was reasonable for the magistrate to believe that the subject blue Chevrolet had been used to transport cocaine and money. Moreover, given that the subject vehicle was connected with illegal drug trafficking on two occasions, there was probable cause to conclude that the subject vehicle would continue to be used in the transportation of cocaine and currency in connection with illegal activities and that tracking the blue Chevrolet would lead agents to discover properties used in connection with drug activities. See United States v. Bramlett, 232 F. App'x 940, 943 (11th Cir. 2007) (finding sufficient probable cause for search of residence because agents orchestrated a controlled buy, observed the confidential informant enter and exit the residence with methamphetamine, and monitored and recorded the transaction as it occurred); United States v. Thomas, 159 F. App'x 979, 982 (11th Cir. 2006) (holding that where confidential informants statements about drugs being purchased within an apartment were corroborated by two controlled purchases from the apartment, probable cause existed to search the apartment); United States v. Burton, 698 F. Supp. 2d 1303 (N.D. Ga. 2010) (holding that placement of global positioning system on vehicle was justified by reasonable suspicion that operator of vehicle was engaged in criminal activity because law enforcement had received information from multiple sources that

7

driver of the vehicle was distributor of cocaine and visual surveillance revealed that it was parked at multiple locations of suspected drug activity).

Defendant, however, seeks to impose an additional requirement that in order for probable cause justifying the search of the blue Chevrolet to exist, the Government must also show a connection between the blue Chevrolet and Defendant Haces-Delgado. Defendant, however, presents no authority in support of his argument and does not reply to the Government's argument that there is no such requirement to prove a nexus between the car and Defendant Haces-Delgado. This Court agrees with the Government that the affidavit need only establish a nexus between the criminal activity and the blue Chevrolet. Moreover, this Court has not located any case law supporting Defendant's position. Indeed, to the contrary, law enforcement officers may even search a vehicle without a warrant if there is merely a fair probability that evidence of a crime will be contained in the vehicle and the vehicle is operational. United States v. Virden, 488 F.3d 1317, 1321-22 (11th Cir. 2007); United States v. Tamari, 454 F.3d 1259, 1265 (11th Cir. 2006).

Defendant also argues, without providing any legal authority, that Special Agent Nesbit's affidavit must establish that "normal surveillance methods were attempted first and subsequently failed to produce results." To the extent that Defendant is arguing that

8

the federal wiretapping statute requires that Special Agent Nesbit establish that normal surveillance methods were attempted and failed to produce results, his argument fails. The federal wiretapping statute requires that a judge issuing an ex parte order authorizing or approving interception of "wire, oral, or electronic communication" determine from information before her that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). Section 2518(10)(a) allows for any aggrieved person to move to suppress the contents of any wire or oral communication if it is unlawfully intercepted, if the order of authorization or approval under which it is intercepted is insufficient on its face, or if the interception was not made in conformity with the order of authorization or approval. 18 U.S.C. § 2518(10)(a). Electronic communications are not suppressed unless the violation rises to a constitutional level. Id. The placement of the global positioning device on the blue Chevrolet, however, was not an interception of "wire, oral, or electronic communications" for purposes of the wiretapping statute and is not covered by its provisions. 18 U.S.C. §§ 2510(1) (defining wire communications as "aural transfers"); 2510(12)(C) (excluding tracking devices from the definition of electronic communications), 2518(1) (describing requirements for applying for an order authorizing the interception of a wire, oral, or electronic communication); 18 U.S.C. §

3117; United States v. Moore, 562 F.2d 106, 109 (1st Cir. 1977) ("Beepers, which do not relay oral communications, are not within the definition of wiretapping devices"); United States v. Ortega-Estrada, No. 1:07-CR-356-TWT, 2008 WL 4716949, at *14 (N.D. Ga. Oct. 22, 2008) (noting that GPS information is not an intercepted electronic, wire, or oral communication).

Furthermore, this Court is not persuaded by Defendant's argument in reply that the agents had no evidence that the blue Chevrolet would be utilized in drug transactions again because they had only observed two sales of drugs involving the vehicle. Law enforcement need not prove to a certainty that contraband or evidence will be found at the location to be searched because only a fair probability is required. Bramlett, 232 F. App'x at 943 & n.4. Where the car has previously been used on two occasions for a drug transaction, there was a fair probability that the car would be used in additional drug deals. Bramlett, 232 F. App'x at 943 & n.4. Because the affidavit supplied the necessary probable cause for the issuance of the search warrant, Defendant's Motion to Suppress Intercepted Communications should be **DENIED**. Docket Entry [75].

## CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that Defendant's Motion to Suppress Intercepted Communications be **DENIED**. Docket Entry [75]. There are

no further motions or problems pending before the undersigned to prevent the scheduling of this Defendant for trial.  Therefore, this action is **CERTIFIED READY FOR TRIAL**.

**SO ORDERED, REPORTED AND RECOMMENDED** this <u>15th</u> day of September, 2010.

<u>s/Linda T. Walker</u>
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,      : | |
| : | |
| Plaintiff,      : | |
| : | |
| v.      : | CRIMINAL CASE NO. |
| : | 1:09-CR-446-TWT-LTW |
| LUIS MANUEL HACES-DELGADO,      : | |
| : | |
| Defendant.      : | |

**ORDER FOR SERVICE OF REPORT AND RECOMMENDATION**

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b) (1), within fourteen (14) days after service of this order, each party may file written objections, if any, to the Report and Recommendation. Pursuant to Title 18, United States Code, Section 3161(h) (1) (F), **the above-referenced fourteen (14) days allowed for objections is EXCLUDED from the computation of time under the Speedy Trial Act.**

Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and

AO 72A
(Rev.8/82)

shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 15th day of September, 2010.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)